IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBORAH DUNGEE, on behalf of herself and all others similarly situated, </br></br> Plaintiff, </br></br> v. </br></br> DAVISON DESIGN & DEVELOPMENT, INC., formerly known as DAVISON & ASSOCIATES, INC., </br></br> Defendant. | C.A. No. 10-325-GMS |

**MEMORANDUM**

## I. INTRODUCTION

Plaintiff Deborah Dungee ("Dungee") filed a putative class action complaint against Defendant Davison Design & Development, Inc. ("Davison"), claiming that: (1) Davison breached its agreements with Dungee; (2) Davison violated the American Inventor's Protection Act of 1999, 35 U.S.C. § 297 (the "AIPA") by making material misrepresentations; and (3) Davison violated the AIPA by failing to make the proper disclosures under the statute. (D.I. 1.) After settling the "claims-made," the court issued an order granting $1,118,936.40 in attorney's fees to Dungee's counsel ("Class Counsel"), which was calculated using the lodestar amount of $257,226.76 enhanced by a multiplier of 4.35. (D.I. 36 at 8; D.I. 51 at 4 n.2; D.I. 61 at 4.) Davison appealed the award to the Third Circuit, and the case was remanded for the court to specify evidence on the record that supports the application of an enhancement multiplier. *Dungee v. Davison Design & Development Inc.*, 674 Fed. App'x 153 (3d Cir. 2017).

1

Currently pending before the court is Dungee's Motion on Remand for Attorneys' Fees and Expenses. (D.I. 61.) Dungee requests that the court award Class Counsel $525,125.89 in fees, which would be calculated by using an increased lodestar amount that encompasses fees for the time spent on appeal and an enhancement multiplier of 1.73. (D.I. 61; D.I. 63.)

Davison suggests that the court award Class Counsel the lodestar amount of $257,226.76, which does not include fees for time spent on appeal or an enhancement multiplier. (D.I. 62.) For the following reasons, the court will grant Class Counsel an award of $325,878.44 in attorney's fees and costs.

## II. BACKGROUND

On April 21, 2010, Dungee filed suit on behalf of Davison's customers who entered into agreements with Davison for invention related services between January 28, 2000 and March 19, 2006. (D.I. 1.) Dungee alleged that Davison breached its agreements with her, thereby violating the AIPA, by making material misrepresentations and by failing to make disclosures of how successful Davison was in promoting the inventions of their clients, as required by the statute. (D.I. 1.) Davison filed a motion to dismiss on June 3, 2010, which was denied by the court on March 29, 2011. (D.I. 6; D.I. 15.) After Davison's motion to dismiss was denied, there were no depositions, no discovery motions, no summary judgment proceedings, no pre-settlement class-certification proceedings, and no pre-settlement class-certification court appearances. Instead, Class Counsel spent time exchanging and reviewing documents in preparation for the settlement negotiations with JAMS mediators, engaging in those settlement negotiations, and communicating with class members. (D.I. 61 at 1; D.I. 61 at Ex. B.) After three years of settlement negotiations, the parties agreed to a "claims-made" settlement on December 8, 2014. (D.I. 34-1.) Additionally,

the parties agreed that Davison would pay Class Counsel's fees, but did not agree on an amount at that time. (D.I. 36 at 3.)

On April 10, 2015, Dungee sought $2 million in fees in her Motion for Award of Attorney's Fees and Expenses and Class Representative Incentive Award. (D.I. 36.) In her motion, Dungee claimed that the common fund doctrine of the percent-of-recovery method should apply. (D.I. 36 at 5-7.) Dungee argued that the common fund should be valued at the total amount made available to the class, which was $25,492,157.50. (D.I. 36 at 7.) At the time of the filing of the initial fee request, the parties had not yet determined the value of the timely submitted claims. (D.I. 49.) According to Dungee, her $2 million request, thus, represented 7.8% of the value of the entire settlement available to class members. (D.I. 36 at 7.) Thus, Dungee concluded that Class Counsel's fee request was fair and reasonable because it was below the Third Circuit's precedent that a reasonable award of attorney's fees should be within the range of 19% to 45% of the common fund. (D.I. 36 at 7.)

In contrast, Davison argued that the lodestar calculation method was more appropriate under the circumstances because the total value of the fund made available to the class was not representative of the value the class would receive. (D.I. 41.) Davison developed the $257,226.76 lodestar value using Class Counsel's hourly billing rates from 2010 multiplied by 611—the hours Class Counsel spent on the case until Dungee filed her initial motion for attorney's fees on April 10, 2015. (D.I. 36 at 8; D.I. 36 at 8; D.I. 61 at 4.) Davison concluded that Class Counsel's lodestar amount was a fair and reasonable award of attorney's fees. (D.I. 41.)

On July 30, 2015, the court held a class action settlement fairness hearing at which the parties presented their attorney's fees arguments. (D.I. 47-1). After the hearing, the parties jointly stipulated that the total value of the timely submitted class claims was $564,735.50. (D.I. 49.) On

3

February 16, 2016, the court issued an order granting Class Counsel a fee award. (D.I. 51.) To determine the amount of the award, the court used the lodestar method starting with the parties' agreed upon lodestar amount of $257,226.76, and applied a 4.35 enhancement multiplier, which resulted in an award of $1,118,936.40. (D.I. 51 at n.2.)

Davison timely appealed the court's fee award on March 11, 2016. (D.I. 55.) The Third Circuit vacated the award and remanded the case on January 6, 2017 for the court to "reassess whether an enhancement to the lodestar calculation is appropriate in this case and, if so, . . . [to] provide factual findings supporting any multiplier used." *Dungee,* 674 F. App'x at 155.

## III. STANDARD OF REVIEW

The general rule in the United States is that each party must pay its own attorney's fees and expenses except where a federal statute explicitly authorizes otherwise. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1987); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975). Under the AIPA, district courts are authorized to award the prevailing party reasonable costs and attorney's fees. 35 U.S.C. § 297(b)(1). The grant of attorney's fees is not automatic, rather the party seeking such fees bears the burden of proving the reasonableness of its request. *Del. Valley Citizens' Council for Clean Air,* 478 U.S. at 564 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Therefore, the grant of attorney's fees turns on the facts of each case, and the district court must use its discretion to determine how to calculate the fees and what fees are reasonable. *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

"There are two primary methods for calculating attorney's fees awards in the class action context: (1) the percentage-of-recovery method; and (2) the lodestar method." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) (footnote omitted). The lodestar method is

appropriate in cases involving a fee-shifting statute and carries with it a strong presumption of reasonableness. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565. The lodestar analysis starts with an assessment of reasonable fees using "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 564. Where the lodestar method is implemented, enhancement multipliers may be added if "rare" or "exceptional" circumstances of the case suggests "superior attorney performance." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The party requesting an enhancement to the lodestar carries the burden of showing that a multiplier is necessary to reach a fair and reasonable fee award using "specific evidence on the record." *Dungee*, 674 F. App'x at 157.

## IV. DISCUSSION

### A. The Lodestar Method

The court previously awarded Class Counsel the lodestar amount enhanced by a multiplier of 4.35, resulting in a judgment of $1,118,936.40 in attorney's fees. (D.I. 51.) On remand, Dungee does not argue in favor of the court's previously awarded enhancement multiplier, instead, Dungee argues that: (1) the lodestar amount should be increased to $303,540.98 to incorporate the time Class Counsel spent defending the fee award on appeal; and (2) a 1.73 enhancement multiplier should be applied to the increased lodestar, resulting in a total award of $525,125.89. (D.I. 63 at 6.) Davison argues that the lodestar should not be increased to include time spent on appeal and that an enhancement multiplier is not appropriate on the facts of this case. (D.I. 62.) The court will review these arguments in turn.

5

### a. *The Lodestar Will Not Include Time Spent on Appeal.*

Dungee and Davison agree that the original lodestar amount through March 11, 2015 was $257,266.76. (D.I. 61 at 4; D.I. 62 at 5.) Dungee argues that the lodestar amount should be increased to $303,540.98 to include Class Counsel's time spent defending its fee award on appeal. (D.I. 61 at 5.) Davison contends that the lodestar should not include time spent on appeal because Class Counsel should not be awarded fees for their unsuccessful defense of its fee award. (D.I. 62 at 7-8.) The court agrees.

Class counsel is permitted to recover fees-on-fees in the context of class actions, however, the claim to fees-on-fees is not absolute and should be reviewed with some skepticism. *In re Makris*, 482 Fed. App'x 695, 699-700 (3d Cir. 2012). In view of that, the Supreme Court has held that fees-on-fees "should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990). Failure is described as either the loss of an appeal filed by the recipient of the fee award or the failed defense of a fee award on appeal. *See id.* ("For example, if the Government's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the request amount, then the applicant should not receive fees for the time spent defending the higher rate.")

On appeal, Dungee did not defend the use of the 4.35 enhancement multiplier that she recommended that the district court adopt. *Dungee*, 674 F. App'x at 157 n.3. Instead, Dungee argued that an overall award of approximately $1 million in fees was reasonable regardless of the enhancement multiplier used. *Id.* The Third Circuit did not affirm Dungee's fee award, but remanded the case for the court to provide specific factual findings to support the use of an enhancement multiplier. *Dungee*, 674 F. App'x at 157. The Third Circuit found that the court

6

"offered no explanation for why the simple lodestar calculation would not adequately compensate counsel, or why this case presented 'rare' and 'exceptional' circumstances needed to enhance the lodestar." *Dungee*, 674 F. App'x at 157.

On remand, Dungee has abandoned her defense of the court's $1.18 million award and has twice decreased her fee request from $725,462.94 to $525,125.89. (D.I. 61 at 16; D.I. 63 at 6.) This fact alone, even absent an express finding from the Court of Appeals, demonstrates Dungee's recognition that her award request lacks merit. This recognition and consequent failure to successfully defend her award on appeal leads to the conclusion that an award of costs and fees expended during the appeal would be inappropriate. Thus, the court will exclude fees and costs spent on the appeal from its calculation of the lodestar amount.

### b. *An Upward Enhancement of the Lodestar is Inappropriate.*

An upward adjustment of the lodestar figure is only permitted in certain "rare" and "exceptional" circumstances. *Perdue*, 599 U.S. at 554-56. Such circumstances include: (1) superior attorney performance not adequately represented in the attorney's hourly rate; (2) litigation that is exceptionally protracted and accompanied by an extraordinary outlay of expenses; or (3) extraordinary circumstances that resulted in an exceptional delay of the payment of fees. *Id.*

The court awarded Dungee the lodestar amount multiplied by an enhancement of 4.35. (D.I. 51.) In her opening brief on remand, Dungee requested an enhancement multiplier of 2.39, but, as noted, has since reduced her request to 1.73 in her reply brief. (D.I. 61; D.I. 63.) Dungee contends that without an enhancement multiplier, the lodestar amount does not adequately account for: (1) Class Counsel's true market value; (2) the protracted nature of the litigation and the extraordinary outlay of expenses; and (3) the delay in the payment of the fees. (D.I. 61.)

7

Davison argues that the circumstances of this case do not warrant an enhancement multiplier because: (1) the evidence submitted in support of Class Counsel's claimed true market value is not on the record and is inapposite to Class Counsel's billing rates; (2) there was no extraordinary outlay of expenses and the limited motions practice involved in this action demonstrates that the litigation was not protracted; and (3) the length of time it took to resolve this case was not exceptional. (D.I. 62 at 9-17.) The court agrees that an enhancement multiplier is not appropriate given the specific facts of this case, but believes that Class Counsel's billing rate should be adjusted to reflect that Class Counsel did not receive its fees until the case was fully resolved.

### i. Class Counsel's Hourly Rate Reflects the True Market Value of Their Services

First, Dungee argues that a multiplier of .2 should be applied to the lodestar amount to adjust for the true market value of Class Counsel's work. (D.I. 63 at 3.) In support of her argument, Dungee submitted: a 2014 survey done by the *National Law Journal* of senior partner rates at law firms that perform complex litigation and have a presence in Wilmington, an article by *The American Lawyer* titled "With Hourly Rates Rising, Report Shows Record for GC's Cost-Constraint Tactics," a 2017 Community Legal Services fee schedule, and an affidavit from Richard Cross detailing Class Counsel's billing rates with an itemized bill for services rendered from 2010 to 2017. (D.I. 61 at 8; D.I. 63 at 3.) Davison argues that Dungee's submissions fail to provide "specific evidence on the record" that justifies applying an enhancement multiplier. (D.I. 9-14.) The court agrees.

The analysis of whether an attorney's rate should be adjusted to account for the true market value requires two steps: First, the court must determine that the attorney's hourly rate was

inadequate; Second, if the hourly rate is inadequate, the court must adjust the rate to reflect "specific proof linking the attorney's ability to a prevailing market value." *Perdue*, 559 U.S. at 555. An attorney's rate may be found to inadequately measure an attorney's true market value if it only takes into account a single factor, "such as years since admission to the bar," or similar factors. *Id.* The goal of the true market rate analysis is to compensate an attorney "at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." *Id.*

Dungee argues that, according to the *National Law Journal*, Class Counsel's experience rendered its 2010 billing rates inadequate because the rates were lower than the hourly rates that of senior partners at global law firms with a presence in Wilmington. (D.I. 61 at 7–8.) Dungee's argument misconstrues the requirement for a showing that Class Counsel's billing rates were inadequate; it is not whether Class Counsel was paid less than other similarly ranked attorneys in Wilmington, but whether Class Counsel's billing rate was calculated based on deficient factors. First, the article, survey, and fee schedule Dungee submitted are not specific evidence on the record of this case. The only record evidence Dungee points to are lead counsel's billing rates as calculated by Class Counsel's firm. Without more, the court cannot conclude that Class Counsel's billing rates were unreasonable. Therefore, the court finds that Dungee has not met her burden of adducing specific evidence that supports the conclusion that Class Counsel's billing rates were incorrectly calculated or failed to reflect their true value in the marketplace.

Additionally, Dungee failed to point to any evidence on the record that Class Counsel's billing rates were different from those that counsel would receive in a case not governed by a federal fee-shifting statute. What's more, the outside evidence submitted by Class Counsel does not support their own argument. For example, Class Counsel's billing rates both in 2010 and 2017 fall squarely within the range of similarly experienced attorneys as described in the Community

Legal Service survey submitted to the court. *See* Attorney Fees, Community Legal Sers., https://clsphila.org/about-cls/attorney-fees (noting that attorneys with 16-20 years' experience charge $450-$510 and attorneys with 21–25 years' experience charge $520-$570); (D.I. 61 Ex. B at 2; D.I. 68 at 2.) Further, Dungee has also provided no evidence that Class Counsel charged different rates for this matter than they charge for any other matter Class Counsel may have handled. Therefore, the court finds that Dungee has not met her burden of providing specific record evidence that Class Counsel's hourly rate was incorrectly calculated or different from the rates they would receive for a case not governed by a fee-shifting statute. As a result, the court will not apply a .2 enhancement multiplier.

### ii. Class Counsel's Performance Did Not Include an Extraordinary Outlay of Expenses, and the Litigation Was Not Exceptionally Protracted.

Dungee argues that Class Counsel accumulated "nearly $20,000 in hard expenses" from the time the case was filed until the court awarded attorney's fees and costs. (D.I. 63 at 4.) Dungee requests an enhancement multiplier of .3 based on the legal interest rate, compounded annually from the time the litigation commenced in 2010 to the time settlement was reached in 2014. (D.I. 61 at 9.) Davison claims that a portion of Class Counsel's expenses were jointly incurred mediation fees that the parties agreed to share in order to resolve the case. (D.I. 62 at 15; D.I. 61-2 at 35-39.) Further, Davison argues that even if the court considers the total amount of the expenses incurred, jointly or otherwise, the fees still do not amount to an "extraordinary outlay of expenses" that necessitates an enhancement multiplier. (D.I. 62 at 15.) The court agrees.

Enhancements may be appropriate where the litigation was exceptionally protracted and included an extraordinary outlay of expenses. *Perdue*, 559 U.S. at 555. An attorney who agrees to represent the named plaintiff in a class action governed by a fee shifting statute understands that

10

reimbursement is not likely to be received until the successful resolution of the case. *Id.* at 555. Thus, for an enhancement to compensate for expenses, a plaintiff must establish specific facts on the record to show that its case was "unusual" or outside the normal range of delay expected by attorneys who rely on the AIPA. *Id.*

Here, Dungee has not demonstrated that her case was unusual. Both parties agreed to engage in mediation after Davison's first and only motion to dismiss. (D.I. 6.) The mediation lasted for three years and resulted in a "claims made" settlement. (D.I. 34-1.) During and after the settlement negotiations, the parties agreed to allow the court to decide the issues of fees. (D.I. 36 at 3.) From the time the case was filed on April 21, 2010 until the time the court issued its fee award on February 24, 2010, Class Counsel billed 624.3 hours. (D.I. 36-1; D.I. 68 at Ex. A 1–32.) Dungee's only proof of the protracted nature of the case is a summary of the docket and her proffered assertion that "[t]his type of unusual and protracted litigation [] warrants an enhancement." (D.I. 63 at 4.) This statement begs the question—"unusual and protracted" compared to what? This record does not satisfy Dungee's burden of providing "proof in the record that the delay here was outside the normal range expected by attorneys who rely on [AIPA] for the payment of their fees or quantify the disparity." *Perdue*, 559 U.S. at 558. Therefore, the court will decline Dungee's request to apply a .3 enhancement multiplier to the lodestar.

### iii. A Delay in the Payment of Fees.

Dungee requests an enhancement multiplier of .23 to account for the delay in the payment of fees because three years have passed since the settlement was finalized. (D.I. 63 at 4.) Davison contends that there is nothing exceptional or unique about the length of this case or the delay in Class Counsel's receipt of payment to warrant an enhancement multiplier. (D.I. 63 at 16.) The court agrees that Dungee has not provided any evidence to support her conclusion that this case

11

involved an exceptional or unusual delay that would warrant an enhancement multiplier. The court will, however, adjust the lodestar amount to compensate Class Counsel for the delay in the receipt of their fees.

An enhancement multiplier is reserved only for unusual cases; that is, where an attorney's performance involves exceptional delay in the payment of fees. *Perdue*, 559 U.S. at 556. An enhancement may also be appropriate where an attorney assumes costs "in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense." *Id.* The Supreme Court has recognized that the payment of fees generally does not come until the end of cases governed by fee-shifting statutes. *Id.* Compensation for that delay, however, should be made by "either basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value," rather than by an enhancement multiplier. *Id.* (quoting *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)).

Here, the delay in the payment of fees was not unusual or unjustifiable. As described above, one year after Dungee filed her case, the parties jointly entered into settlement negotiations that lasted for three years. (D.I. 34-1.) Both parties agreed that, after they reached a settlement agreement in 2015, attorney's fees would be determined by the court. (D.I. 36 at 3.) Dungee filed a motion for attorney's fees with the court and the court issued its order awarding fees in February of 2016. (D.I. 36; D.I. 51.) Davison filed an appeal one month later, which resulted in the case being remanded in January of 2017. Three months later, Dungee filed her instant motion. (D.I. 61.) Dungee has, again, not presented any specific record facts that explain why the delay of the payment of fees in this case was particularly unusual or unjustifiable. Therefore, the court will not apply an enhancement multiplier for the delay in the payment of fees.

However, while the court finds that an enhancement multiplier is inappropriate, the court acknowledges that there was a delay in payment, as there typically is in cases involving fee-shifting statutes. *Perdue*, 559 U.S. at 556 ("An attorney who expected to be compensated under [a fee-shifting statute] presumably understands that payment of fees will generally not come until the end of the case if at all.") Thus, the court will use its discretion to calculate an updated lodestar amount using Class Counsel's 2017 billing rates multiplied by the hours Class Counsel spent litigating up until the court issued its attorney's fee award on February 24, 2016. *See Perdue*, 559 U.S. at 556 (noting that in cases involving fee-shifting statutes, compensation for the delay is made "by basing the award on current rates"); *see also Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) (same). Therefore, the final lodestar amount will be $307,551.50. (D.I. 68 at 2.)

## V. CONCLUSION

The court rejects the parties' proposed awards and will enter an order directing Davison to pay Class Counsel a lodestar amount of $307,551.50 and $18,326.94 in costs, resulting in a total award of $325,878.44.

Dated: March ___, 2018

UNITED STATES DISTRICT JUDGE

13